PATTON *v.* RANDOLPH.

4-5354                                                              124 S. W. 2d 823

Opinion delivered February 6, 1939.

654

*Daggett & Daggett,* for appellant.

*R. D. Smith* and *R. D. Smith, Jr.,* for appellee.

SMITH, J. Appellee, Joseph Randolph, brought this suit to cancel a deed which' he had executed to appellant, Ida E. Patton, his foster sister. In the decree, from which is this appeal, granting the relief prayed, the following findings of fact are recited.

Randolph owed Payne Brothers the sum of $513.63, which was secured by a mortgage on a forty-acre tract of land which he owned. Appellee, Randolph, became ill, and was carried to his sister's home, and while there told her that he had been unsuccessful in his attempts to borrow money to pay Payne Brothers. Appellee applied to B. C. Pouncey for a loan on the land already mortgaged to Payne Brothers, which Pouncey declined to make unless the title was in appellant, whereupon the land was conveyed to appellant by appellee for the purpose of procuring the loan. It was then orally agreed between appellant and appellee that the land should be rented by appellant and the rents applied to the payment of the

money to be advanced by Pouncey, and when that indebtedness had been paid the land should be reconveyed to appellee. In reliance upon this agreement, and the confidence he reposed in his foster sister, appellee conveyed the land to her. Rents were collected by appellant for the years 1935, 1936, 1937 and 1938, in an amount sufficient to pay Pouncey, that indebtedness being evidenced by a mortgage which appellant gave Pouncey on the land, the debt to Payne Brothers having been paid when the loan from Pouncey was obtained.

Pouncey testified that he had no intimation that the deed from appellee to appellant was not an absolute conveyance, as it purported to be. He further testified: "Later on, about two years ago, he (Randolph) came to me and asked me, 'Have I got any interest in this property?' I said: 'No, you gave Ida Patton a deed.' He said the only reason he wanted to know about it was that he wanted to get a pension, and if he owned any property he could not get it, and he was glad to know that he did not."

There was no finding, nor was there any testimony tending to show, that any fraud or improper influence was exercised upon appellee to induce him to execute the deed. He executed the deed in reliance upon his sister's promise to reconvey the land to him when she had collected enough rent to pay the debt to Payne Brothers, and that collection has been made. The land was shown to be worth about $2,000. The testimony that appellant received the deed to the land from appellee upon the condition that it should be reconveyed when the Payne Brothers debt was paid is sharply controverted, but we accept that finding of the chancellor as being sufficiently established. However, the only fraud alleged or shown was that appellant did not keep faith with her brother, and fraudulently failed to reconvey the land to him. No attempt was made to show when this fraudulent purpose was conceived.

The opinion in the case of *Holt* v. *Moore*, 37 Ark. 145, appears to be decisive of the issue here raised. It was there said: "A parol promise to reconvey, where the sale is absolute, comes within the statute of frauds. The

agreement must be in writing. Parol evidence may be introduced to show that a deed, absolute on its face, is indeed only, as between the parties, a mortgage when a subsisting debt remains to support it. But where there is no remaining debt due to the vendee, where the consideration has passed, or the obligation to pay it has been incurred and there is no obligation of the vendor to repurchase we know of no case where it has held that this option may be retained by parol agreement, any more than a right to make an original purchase at a future time. The equity doctrine for showing by parol that a deed was in fact a mortgage has never been extended so far, and indeed could not be without opening the flood gates of perjury in a country where property so often and unexpectedly increases in value with startling rapidity. Nevertheless, the use of such a promise in overreaching a weak or ignorant mind might become an element of fraud to be considered in connection with other circumstances.''

The deed here in question is an ordinary warranty deed. No debt subsisted between the grantor and grantee. No fraud was practiced in procuring its execution. The acknowledgment was taken by A. L. Waring, the president of the Bank of Hughes, who knew and was known to both parties. That official testified that appellee had discussed with him the execution of the deed both before and at the time of its execution, and appellee knew perfectly well that its purpose and effect was to convey the land to his sister.

It may be said of the testimony in this case, as was said of the testimony in the case of *Spradling* v. *Spradling*, 101 Ark. 451, 142 S. W. 848, that ''There is no testimony that he acquired the title by any intentionally false or fraudulent promise, so that it could be said that a trust *ex maleficio* arose from the transaction. To create such a trust, the mere verbal promise and its breach is not sufficient. There must be some element of fraud practiced whereby the execution of the deed is induced; and in the case at bar there is not a tittle of testimony indicating that any such fraud was practiced by the hus-

band upon the wife in obtaining this deed. 3 Pomeroy, Equity Jurisprudence, § 1056.''

In the case of *Ammonette* v. *Black*, 73 Ark. 310, 83 S. W. 910, after quoting from § 1056 of Pomeroy's Equity (the same section cited in the Spradling Case from which we have just quoted) a statement of the law to the effect that a trust *ex maleficio* occurs whenever a person acquires the legal title to land by means of an intentionally false and fraudulent verbal promise to hold the land for a certain specified purpose, and, having thus fraudulently obtained the title, retains, uses and claims the property absolutely as his own, so that the whole transaction by means of which the ownership is obtained is in fact a scheme of actual deceit, Justice RIDDICK added: ''There must, of course, in such cases be an element of positive fraud by means of which the legal title is wrongfully acquired, for, if there was only a mere parol promise, the statute of frauds would apply.''

It may be said that there is lacking here any testimony of positive fraud, by means of which the legal title was wrongfully acquired, and the testimony shows only a mere parol promise to reconvey.

In the case of *Tatge* v. *Tatge*, 34 Minn. 272, 25 N. W. 596, it was held by the Supreme Court of Minnesota, in an opinion by Judge MITCHELL, that the mere refusal to perform a verbal agreement, void under the statute because not in writing, is not fraud for which a court will declare and enforce a constructive trust. There was an additional opinion in that case, also written by Judge MITCHELL, disposing of a petition for rehearing. 26 N. W. 121. This additional opinion recited that a reargument was asked, upon the ground that the court had overlooked the point that the evidence conclusively showed that when Mrs. Tatge, the grantee in the deed attacked, made the promise to reconvey, she did not intend to fulfill it, and that this amounted to actual fraud, which constituted Mrs. Tatge a trustee *ex maleficio*. In disposing of this contention it was there said: ''Now the authorities are uniform that a mere refusal to perform a verbal promise, void under the statute, is no ground for relief on the ground of fraud. This is so for the manifest rea-

son that if a party chooses to go outside of the law, and trust to the honor of another, he must take the consequence of his misplaced confidence; and, in such a case, we fail to see how it can make any difference whether the promisor did or did not at the time intend to fulfill the promises. The case is obviously different where there has been some concealment or misrepresentation of facts or of the real nature of the transaction, or some oppression, intimidation, undue influence, or the like, by means of which a party has been deceived or entrapped into making the conveyance. But, notwithstanding certain loose remarks in some of the cases, we find no well-considered case which holds that the *mere intention* not to perform will, in and of itself alone, furnish a ground for relief on the ground of fraud. Take the somewhat analogous case where goods are sold on the faith of a verbal guaranty, it has never been contended that relief should be given on the ground of fraud because the guarantor did not intend to perform his guaranty, his design being merely to induce the vendor to part with his goods, and then escape liability under cover of the statute. See 1 Lead. Cas. Eq. 358.''

The case of *Armstrong* v. *Armstrong*, 181 Ark. 597, 27 S. W. 2d 88, is relied upon to sustain the decree from which is this appeal. There a trust was impressed upon lands which had been conveyed by a deed absolute in form, upon the showing made that the purpose of the deed was to create a trust for a specific purpose. There the grantors conveyed to Monroe Armstrong, their elder brother, to enable Monroe to borrow money to discharge a mortgage placed upon the lands by their ancestor. The opinion recites that ''The appellees (grantors) are ignorant negroes, some of them almost imbeciles, and their testimony as to their knowledge of Monroe's intention is neither clear nor definite, but, as Monroe was the elder brother, apparently the most intelligent, and in whom they had trust and confidence, the chancellor might have reasonably concluded that they did not realize the intention of Monroe until he made a conveyance of the timber standing upon the land, . . .''

Here, there is no question about appellee's intelligence. He appears to have been as canny as he was uncandid. Notwithstanding the fact that he alleged in his complaint, and his original testimony was to the effect, that he did not know that he had executed a deed but thought he had executed a will, his deposition shows that he possessed, at least, average intelligence, and we have no doubt, as Mr. Waring testified, that appellee knew exactly what he was doing when he executed the deed, and we are convinced also that no fraud, duress or deception was practiced upon him to induce its execution. His own and other testimony in his behalf establishes only the fact that he conveyed the land to his sister in reliance upon her verbal promise to reconvey to him when his mortgage debt had been paid, and, as was said by Justice FRAUENTHAL in the case of *Spradling* v. *Spradling, supra,* this verbal promise, and its breach, is not sufficient, alone, to create a trust *ex maleficio.*

The decree of the court below, canceling the deed from appellee to appellant, must, therefore, be reversed, and the cause will be remanded with directions to dismiss the complaint as being without equity.