WALKER *v.* BIDDLE.

5-792                                284 S. W. 2d 840

Opinion delivered December 5, 1955.

[Rehearing denied January 9, 1956.]

*McKay, Anderson & Crumpler,* for appellant.

*Spencer & Spencer,* for appellee.

GEORGE ROSE SMITH, J. In 1943 and 1944 the appellant, Dee Walker, obtained from his sisters, Addie Biddle and Mary Walker, quitclaim deeds to 320 acres of land

that had been held by the Walker family for many years. This suit to cancel those deeds was brought by Addie Biddle and by some of Mary Walker's heirs, the others being named as defendants. The plaintiffs successfully contended below that when the deeds were executed the two sisters were tenants in common with their brother and placed the title in his name merely to enable him to act for all three in the execution of oil-and-gas leases and deeds. Dee contends that the land was already his, that he had put the title in the names of his wife and two sisters for the purpose of defrauding a judgment creditor, and that after the judgment claim had been settled the sisters simply reconveyed the title to him.

Since we have concluded that all issues of fact must be determined adversely to the appellant by reason of a letter he wrote to Addie Biddle a few months before this suit was filed, we pass quickly over the background facts. The Walker children inherited the land from their father in 1907 but lost it by foreclosure in 1927. Title was regained in 1931 when Henry Stevens executed a deed to Dee's wife and the two sisters. Dee says that he alone arranged to repurchase the land from Stevens in 1927, that he made payments until the debt was satisfied in 1931, and that Stevens, who was Dee's attorney, made the deed to Dee's wife and sisters in order to protect the title from an unsatisfied judgment against Dee. The testimony on the other side is that the brother and two sisters all lived on the land, worked the crops together, and by their joint efforts regained the land as tenants in common.

Title remained in the three women until Addie and Mary gave Dee a quitclaim deed to 160 acres in 1943 and a similar deed to the other 160 acres in 1944. These are the deeds now in controversy; we have mentioned the conflicting reasons that are given by the parties for the execution of these conveyances.

The brother and sisters continued to live on the property until Mary died in 1947. According to Addie's testimony, in 1950 and thereafter she tried to persuade Dee

to divide the land, but Dee wanted to postpone the division until he could "get shed" of his second wife. On June 26, 1952, Dee wrote his sister this letter, which we consider to be decisive:

"Hello Addie  how are you  find I hope  this leave al well  hope this will find you al the same  I got your letter  was glad to here from you  But sorry that you think I am made with you  for what  listen Addie  you is got land her just like I am  dont want your land  and aint trying to take it from you  listen I have married the laward [lawyer] told me  let that land stay like it is if I dont  my wife can get a part of it  that why I wont vied [divide] it  if it stay like it is she can not get any thing that why I dont want to vied it yet a while  that why I diden want you to talk with me before her that night  listen  when you come down here I will tell you al a bout it  when I see you a gen  I dont want you land so with love

Dee Walker"

Confronted with this letter Walker was unable to explain why he had written that his sister had land just as he had, why he had assured her that he was not trying to take it from her, or why he had thought is necessary to give a reason for not dividing the land. When this letter is considered with the other testimony we conclude that the appellees have met the burden of showing by clear and convincing proof that the deeds in question were made in reliance upon Walker's promise to hold the land for himself and his sisters.

Aside from this question of fact the appellant urges two issues of law. First, it is argued that the statute of frauds prevents the enforcement of Dee's oral promise to hold the title for his sisters. This is true, but the statute by its terms does not apply to a constructive trust. Ark. Stats. 1947, § 38-107. That type of trust is involved here. When the grantee's oral promise to hold for the grantor is fraudulently made, or when such a promise is given by a grantee who stands in a confidential relation to the grantor, equity will impose a constructive trust

upon the grantee's refusal to perform his promise. *Armstrong* v. *Armstrong*, 181 Ark. 597, 27 S. W. 2d 88; Rest., Restitution, § 182; Rest., Trusts, § 44. The relation between brother and sister is, in the absence of estrangement or other unsual circumstances, one of confidence; they are not regarded as dealing with each other at arm's length. *Gillespie* v. *Holland*, 40 Ark. 28, 48 Am. Rep. 1; *Reeder* v. *Meredith*, 78 Ark. 111, 93 S. W. 558, 115 Am. St. Rep. 22.

Second, it is contended that since the statute of limitations, in the absence of concealment, runs in favor of the trustee of a constructive trust, *Matthews* v. *Simmons*, 49 Ark. 468, 5 S. W. 797, this suit is barred by the seven-year statute. The answer is that the constructive trust did not arise at the moment the deeds were executed. It is the transferee's repudiation of his promise that brings the trust into being. The evidence indicates that Walker did not claim the land as his own until after his sister Mary's death in 1947; so the bar of the statute had not fallen when this suit was brought in 1952.

Affirmed.