S. & M. OIL COMPANY *v.* MOSLEY.

5-1123                                        297 S. W. 2d 926

Opinion delivered January 28, 1957.

*Carneal Warfield,* for appellant.

*Grubbs & Grubbs,* for appellee.

ED. F. McFADDIN, Associate Justice. This suit was brought by appellee, Jack Mosley,[1] to have appellant, S. & M. Oil Company, declared a constructive trustee of a lot, and filling station thereon, in the City of Eudora, and to obtain performance of the constructive trust by the execution and delivery of a deed to appellee. The Chancery Court awarded the relief prayed, and this appeal resulted.

The background facts are largely undisputed. In the fall of 1951, Jack Mosley and W. R. Smith (acting for himself and other members of the Smith family) organized a corporation named "S. & M. Oil Company." The corporation was (a) to become a bulk distributor for the "Pan-Am" products in the Eudora territory; and (b) to own and lease to Pan-Am Southern Oil Company (herein referred to as "Pan-Am") a filling station in Eudora where "Pan-Am" products would be sold at retail. Mosley was to pay $10,000 for half of the corporate stock, and the Smiths were to pay a like amount for the other half. Mosley paid his $10,000, but the Smiths, instead of paying $10,000, only paid an amount between $800 and $1,800. As a result of the Smiths' failure, the S. & M. Oil Company was in financial difficulties from the beginning. In the spring of 1952, "Pan-Am" took over the bulk plant operation and Mosley assumed the other liabilities of S. & M. Oil Company; and, by deed dated March 13, 1952, the S. & M. Oil Company duly conveyed to Jack Mosley the filling station property in Eudora. The validity of this deed is unquestioned.

The S. & M. Oil Company had borrowed from a bank in Eudora approximately $12,800, which had been used in the construction of the filling station. A New Orleans bank had agreed to make the S. & M. Oil Company a loan of $15,000, secured by a first mortgage on the filling station property and assignment of rentals; and "Pan-Am" had agreed to rent the filling station from the S. & M. Oil Company at a monthly rental, which was to be paid direct to the New Orleans bank to amortize

---

[1] Mosley's wife was a party plaintiff and is an appellee, but her only interest is a claim of dower, so we refer to Jack Mosley as "appellee."

the $15,000 loan. The Eudora bank money was a short term loan and was to be retired from the proceeds of the New Orleans bank loan. All of this matter was pending in March, 1952, when the S. & M. Oil Company deeded the filling station property to Mosley and he assumed the outstanding obligations of the S. & M. Oil Company. In May, 1952, the New Orleans bank was ready to take the first mortgage from the S. & M. Oil Company and advance the $15,000. But, in the meantime, the title had been transferred by the S. & M. Oil Company to Mosley.

The foregoing are the background facts; and we get now to the points in dispute. In order to prevent a delay in closing the loan with the New Orleans bank, the representative of ''Pan-Am,'' Mr. Mosley, and his attorney, Mr. Grubbs, went to W. R. Smith and explained the situation to him and asked if he would agree that the title be transferred back to the S. & M. Oil Company and the mortgage and papers made to the New Orleans bank, and then the S. & M. Oil Company would re-transfer the title to Mosley, just as had been done in the deed of March 19, 1952, previously mentioned. W. R. Smith, secretary of the S. & M. Oil Company, acting for himself and the other members of the Smith family and the corporation, agreed to such proposition. Accordingly, Mosley and wife deeded the filling station property back to the S. & M. Oil Company; the mortgage and other papers were made to the New Orleans bank; the $15,000 obtained from that bank was used to retire the Eudora bank loan; and then W. R. Smith, acting for himself and the S. & M. Oil Company, refused to reconvey the filling station property to Mosley. He (Mosley) then brought this suit to have the S. & M. Oil Company declared a constructive trustee of the legal title to the filling station property, and to require that it be reconveyed to him. The Chancery Court granted the prayed relief and the correctness of that decree is the issue here.

We have a multitude of cases involving constructive trusts. Some of them are: *Ammonette* v. *Black,* 73 Ark. 310, 83 S. W. 910; *Barron* v. *Stuart,* 136 Ark.

481, 207 S. W. 22; *Moore* v. *Oates,* 143 Ark. 328, 220 S. W. 657; *Bray* v. *Timms,* 162 Ark. 247, 258 S. W. 338; *Eason* v. *Wheeler,* 167 Ark. 320, 268 S. W. 29; *Davidson* v. *Edwards,* 168 Ark. 306, 270 S. W. 94; *Armstrong* v. *Armstrong,* 181 Ark. 597, 27 S. W. 2d 88; *Patton* v. *Randolph,* 197 Ark. 653, 124 S. W. 2d 823; *Ripley* v. *Kelly,* 207 Ark. 1011, 183 S. W. 2d 793; and *Walker* v. *Biddle,* 225 Ark. 654, 284 S. W. 2d 840.

From our cases, and from authorities generally, the following rules — applicable to this case — are clearly recognized: (a) a constructive trust in lands — as distinguished from an express trust[2] — may be shown to have been established by parol, but such evidence must be clear, cogent and convincing; and (b) in the absence of family relationship or confidential relationship, the evidence required to establish a constructive trust must show that the original promise to reconvey was made with a fraudulent intention; and the mere failure to reconvey — standing alone — is not sufficient to establish the fraudulent intent.

With these two applicable rules before us, we conclude that the decree of the Chancery Court should be affirmed. Appellee presented the required quantum of evidence to show that Smith had agreed that the S. & M. Oil Company would reconvey the filling station property to Mosley as soon as the mortgage to the New Orleans bank had been consummated. In fact, Smith himself admitted as much on cross-examination:

"Q. Then, Mr. Smith, regarding the reconveyance of this property back to Jack Mosley, the only difference, as I understand, between your testimony and Mr. Mosley's testimony is that he was also to execute another deed back to S. & M. Oil Company.

"A. I think that is substantially correct, other than perhaps some difference in detail."

Furthermore, appellee established by the required quantum of evidence the fact that Smith did not un-

---

[2] As regards express trusts involving lands or tenements, the Statute requires that they can be proved only by some written instrument. See § 38-106 Ark. Stats.

equivocally intend for the S. & M. Oil Company to reconvey the filling station property to Mosley after the New Orleans bank mortgage had been executed. As his reason for the S. & M. Oil Company refusing to reconvey the property to Mosley after the New Orleans bank mortgage had been executed, Smith claimed: that when the deed from S. & M. Oil Company to Mosley had been executed in March, 1952 — as heretofore recited — Mosley had agreed that he would execute and place in escrow an ultimate reconveyance transferring the filling station property back to S. & M. Oil Company, so that the ultimate equity in the filling station property — after the New Orleans bank had been paid in full — would be owned equally by Mosley on the one part and the Smith interests on the other part. So Smith contended in the present suit that the S. & M. Oil Company would not convey the property to Mosley unless and until Mosley made the ultimate reconveyance to the S. & M. Oil Company so that the equities could be ultimately divided as claimed by Smith.

When we remember that Mosley had paid $10,000 for capital stock in the S. & M. Oil Company and that the Smiths had paid no more than $1,800 for stock in the Company, the inequality of such payments to a "fifty-fifty" division in the ultimate equity becomes glaringly apparent; and the inequality makes unlikely any such agreement for ultimate reconveyance, as is claimed by Smith. The Chancery Court found that Smith did not offer sufficient proof to establish his alleged ultimate reconveyance of title to S. & M. Oil Company; and we agree with the Chancery Court on this point.

So with the ultimate reconveyance not being proved, the record stands in this shape: Smith admitted that there was to be an immediate reconveyance to Mosley from the S. & M. Oil Company after the execution of the mortgage to the New Orleans bank; and Smith has failed to prove any ultimate reconveyance by Mosley to the S. & M. Oil Company. Therefore, Smith never intended for the S. & M. Oil Company to execute the deed to Mosley unless and until Mosley executed the ultimate re-

conveyance. Smith does not claim that when he had the conversation with Mosley, Clardy and Grubbs, he (Smith) ever mentioned the ultimate reconveyance. It remained undisclosed to those who heard him agree to the immediate reconveyance to Mosley.

In the light of the foregoing and other evidence in the record, we conclude that the decree should be affirmed.