KINGREY *v.* WILSON.

5-1250                                              301 S. W. 2d 23

Opinion delivered April 15, 1957.

[Rehearing denied May 13, 1957]

*Terral & Rawlings* and *John T. Haskins,* for appellant.

*C. M. Carden,* for appellee.

J. SEABORN HOLT, Associate Justice. Appellee, Bernice Wilson, brought this suit against Homer Kingrey and his wife, appellants, to cancel a warranty deed dated December 13, 1955, which she gave to appellants. This deed for a consideration of $1,000 conveyed 4.4 acres of land, with the exception of a parcel 100 ft. x 110 ft. on which appellee's home (or dwelling) was located. She alleged in her complaint that this deed was procured from her through misrepresentation and fraud and that she received no consideration whatever. She asked that this deed be cancelled and set aside. Appellants answered with a general denial and also filed a cross complaint alleging that the suit was brought by appellee "maliciously and without probable cause" and sought damages.

Trial was had and following an extended and patient hearing the court found: "That the aforementioned deed conveying the above described property should be set aside for two reasons; fraudulent misrepresentations and total lack of consideration. The court finds that there was a relationship of trust and confidence between the plaintiff and the defendants and that this confidential relationship was taken advantage of by the defendants through their misrepresentations and procured the execution of said deed by virtue of the misrepresentations; that in addition there was a complete lack of consideration for the execution of said deed. That said deed should be set aside for both reasons."

For reversal appellants rely on the following points: "1. The evidence is not clear, unequivocal and decisive to warrant setting aside the solemn recitals of a deed, nor to warrant the court's findings of fraudulent misrepresentation, lack of consideration and existence of confidential relationship between plaintiff and defendants. 2. The court erroneously varied the terms of a deed upon the finding of no consideration for a voluntary conveyance and in effect found a resulting trust to exist which findings were erroneously based upon parol testimony. 3. The court erred in failing to grant defendants' motion to dismiss plaintiff's complaint as a matter of law after plaintiff failed to answer the request for admissions under oath and in permitting plaintiff to answer such questions at the trial. 4. The court erred in failing to grant defendants a continuance at the close of plaintiff's testimony and in failing to strike the testimony not in conformity with the plaintiff's pleadings. 5. The court erred in not permitting appellee to be cross-examined on whether or not she and her ex-husband were living together in adultery."

## 1 and 2

After a review of all the testimony we have concluded that it is sufficient to support the findings and decree of the trial court, however, on trial *de novo* here we have elected to affirm the decree on a different ground, that is, that the testimony shows that appellee was the beneficiary of a constructive trust which was shown to exist in the property described in the above deed, which she gave to appellants. We hold that appellee has met the burden of showing this by proof that is clear and convincing. See *Walker* v. *Biddle,* 225 Ark. 654, 284 S. W. 2d 840.

The record reflects that appellee and her husband were divorced November 10, 1955. Prior to the divorce her husband had on September 1, 1955, deeded the land here involved to her. The appellants lived across the road from appellee and they became her very close personal friends and she relied strongly on Kingrey for advice. Appellee and her two children moved into appel-

lants' home at their request, where they lived with them for about four months.

Appellee testified (appellants' brief): "There was talk my husband would resue and take the property. Mr. Kingrey said he could fix it where he couldn't get the property. We talked over conveying the property to Mr. Kingrey to keep Mr. Wilson from getting the property . . . Ernest Briner made out the deed. Mr. Briner said just in case something went wrong he would make out the deed for $3,500 where I could have something for the land. I went to Mr. Briner's office with Mr. Kingrey on Friday or Saturday and went back on Tuesday evening and signed it. I did not notice what kind of deed I signed. I did not receive anything for the deed. I held the deed for awhile before delivering it to Mr. Kingrey. I didn't know until this year when my former husband came back and we were talking about it that the deed had been recorded. I gave Mr. Kingrey the money to pay the delinquent taxes. He redeemed the taxes in his name . . . There was talk all around that my husband was going to take the property from me and the children. We talked it over and they were going to hold the property until this was settled and then it would be given back to me . . . We were offered $7,500 for the whole place not long ago. That was about two or three years ago . . . Mr. Kingrey's exact statement concerning M. J. Wilson taking the land away from me was to fix it in his name to keep for me and then he could not get it and when this was over I would have the land. This statement was made a week or so before December 13, 1955, the date the deed was signed. When this statement was made Aaron Johnson and wife, Mildred Johnson, Charlie Allen and Mrs. Allen and Bill LaGue were present . . . My sole purpose in executing the deed was to hold the property where my husband couldn't take it . . . I never received one dime of the consideration stated in that deed."

Mr. Wilson, appellee's ex-husband, tended to corroborate appellee. "Q. He (Kingrey) did state that he was going to give the land back? A. He said "I am

going to give it all back to Bernice (appellee)." Aaron Johnson, on behalf of appellee, testified (appellants' abstract): "I know the defendants (appellants) and plaintiff (appellee). I was present when they were discussing making out a deed to Mr. Kingrey to keep M. J. from resuing and getting the land, and I understood when the trouble was over he was going to turn it back over to her." Charles Allen testified: "I visited in the Kingrey home while Mrs. Wilson lived with them. The conversation was she would convey to Mr. Kingrey until such time as they could settle their trouble, then Mr. Kingrey would give it back to her." Bill LaGue testified: "Mr. Kingrey told me he did not want to see Wilson get the land back from Bernice and thought they were going to have it fixed so he could not until their trouble was settled. This was after they were divorced. He said she was to get it back after the settlement and they were not going to charge Bernice for staying there; that she had worked hard and filled the deep freeze." Mrs. Aaron Johnson corroborated the testimony of the above witnesses for appellee.

Mr. Kingrey testified: "Q. As I understand you don't contend that you paid her anything for this deed. A. No, I never paid her anything." From appellants' abstract: "When she told me she was going to give me the land I told Mr. Briner to enter $1,000 in it. She said I could have the property for what I had done for her. I kept her in my house for four months." Kingrey denied ever having made the statements which appellee's witnesses testified that he made. There was other evidence on the part of appellants tending to contradict that offered by appellee.

As indicated, we think that when all the evidence is considered and measured by the clear and convincing rule, it was sufficient to support the findings and decree of the trial court. We said in the *Walker* case above that: "When the grantee's oral promise to hold for the grantor is fraudulently made, or when such a promise is given by a grantee who stands in a confidential relation to the grantor, equity will impose a constructive trust upon the grantee's refusal to perform his prom-

ise. *Armstrong* v. *Armstrong,* 181 Ark. 597, 27 S. W. 2d 88; *Rest., Restitution,* § 182; *Rest., Trusts,* § 44.'' A constructive trust may be shown by parol testimony. See *Stacy* v. *Stacy,* 175 Ark. 763, 300 S. W. 437 and *Harbour* v. *Harbour,* 207 Ark. 551, 181 S. W. 2d 805.

### 3.

On appellants' third point it appears that appellants,—proceeding under § 28-358 Ark. Stats. 1947, —submitted certain questions to appellee to be answered under oath. Question 28 was: ''Didn't you execute a deed to Homer and Wilma Kingrey on December 13, 1955, conveying certain land to them because they had taken care of you and your children after your husband left you and your children for another woman?'' The question was answered ''No.'' None of these questions answered by appellee was verified. On this point appellants say: ''Appellants submitted a request for admissions on appellee, which admissions were answered within the time designated but not under oath. In failing to answer such request under oath they would also be answered in the affirmative as a matter of law. Ark. Stats. 1947 § 28-358.'' The trial court, however, allowed appellee to verify her answers to the questions at the beginning of the trial and we think properly so. In so doing the court was clearly acting within its discretion. It is of strong significance that the above statute provides that the court may on motion or notice shorten or extend the time for answering. Obviously, the purpose and intent of the above section was to expedite the trial of litigation on its merits.

### 4 and 5.

Appellants' fourth point, questioning the action of the court in refusing them a continuance, is wholly without merit. Upon examination of the record we find no error in this regard.

We also find untenable appellants' fifth contention, that he was not permitted on cross-examination of appellee to inquire of her whether she and her ex-hus-

band were living in adultery. Appellants frankly admit that the trial court "is properly allowed wide discretion in permitting or denying such cross-examination." While we think that such cross-examination would have been proper as bearing upon her credibility, we hold, however, that had she admitted adultery, still on the basis of the testimony of the many other witnesses above, we would on trial *de novo* here affirm the case.

For yet another reason there was no error, for appellants did not offer to show what appellee's answer would have been had she been allowed to answer. See *St. Louis Southwestern Railway Co.* v. *Myzell,* 87 Ark. 123, 112 S. W. 203 and *Boland* v. *Stanley,* 88 Ark. 562, 115 Ark. 163.

Affirmed.