ROBERTSON *v.* ROBERTSON.

5-1659                                    317 S. W. 2d 272

Opinion delivered November 10, 1958.

*Eugene M. Munger,* St. Louis, Mo.; *Langston & Walker, Wayne Foster,* for appellant.

*George M. Booth & John L. Bledsoe,* for appellee.

GEORGE ROSE SMITH, J. This is the second appeal in a suit by the appellants, M. O. Robertson and his daughter Mary Etta, against the appellee, Opal Robertson, who is the divorced wife of M. O. Robertson and the mother of Mary Etta. In the original complaint Mary Etta sought an accounting for rents collected by her mother upon forty acres that the mother and daughter own as tenants in common, and M. O. Robertson sought to set aside his conveyance to Opal of an undivided half interest in the land. The chancellor in effect sustained a demurrer to the original complaint and dismissed the suit. On the first appeal, 227 Ark. 978, 302 S. W. 2d 810, we held that Mary Etta's complaint for an accounting stated a cause of action and that M. O. Robertson should have been given time to amend his part of the complaint. The cause was remanded with directions that the suit for an accounting be reinstated and that M. O. Robertson be given time to amend.

Upon remand the plaintiffs filed an amended complaint alleging, in addition to their original causes of action, that Opal Robertson held her undivided half interest in the forty acres upon a constructive trust for Mary Etta. After a trial on the merits the chancellor required Opal to account to her daughter for one half of the rents, but he refused to impress a trust on the land or to set aside Robertson's conveyance to his former wife. This appeal is from the latter rulings.

The appellee insists that upon remand the trial court should not have permitted the plaintiffs to assert a new cause of action by amendment, since this was outside the scope of our directions on the first appeal. The rule is, however, that the pleadings may be amended after an appeal that merely reverses a ruling on demurrer, there

having been no hearing on the merits. *American Inv. Co.* v. *Sager,* 175 Ark. 67, 299 S. W. 374.

The asserted constructive trust is said to have arisen when Robertson conveyed the land to his wife and daughter on September 5, 1947. A divorce suit was then pending between Robertson and his wife, and the deed was executed pursuant to an agreement settling the couple's property rights. Although the deed was absolute in form, the appellants offered proof to show that the purpose of the conveyance was to provide a means of support for Mary Etta, whose custody was being awarded to Opal, that Opal was named as a grantee only to enable her to manage the property for the minor child, and that Opal orally agreed that the land would belong to Mary Etta when she reached her majority. Mary Etta became of full age shortly before the case was heard below.

The appellants' proof is insufficient to establish a constructive trust. A grantee's oral promise to hold the land for a third person is unenforceable under the statute of frauds, but a constructive trust will be imposed if it is shown by clear and convincing evidence that the grantee's promise was intentionally fraudulent or that the grantor and grantee were in a confidential relation. *Walker* v. *Biddle,* 225 Ark. 654, 284 S. W. 2d 840; Rest., Trusts, § 45. In this instance neither condition is shown by the required standard of proof.

To bring about a constructive trust the oral promise must be falsely given, with no intention of performance, so that it amounts to a misrepresentation of fact. Rest., Trusts, § 44, Comment *b; Armstrong* v. *Armstrong,* 181 Ark. 597, 27 S. W. 2d 88. Here there is nothing to indicate this state of mind on the part of Mrs. Robertson except the bare fact that more than ten years later she refused to carry out the asserted agreement. All the rest of the evidence tends to rebut the suggestion that the promise was consciously false. Both the appellants testify that Mrs. Robertson conceded until about the time this suit was filed that the land belonged

to Mary Etta. In 1948, in connection with a second divorce suit after the couple had remarried, Mrs. Robertson signed a separation agreement which recited that the land had been deeded to her and the child for the support and maintenance of the child. These matters certainly indicate that the promise, if it was made, was given in good faith. We are by no means convinced that this mother deliberately set out to defraud her eight-year-old daughter, whose custody she sought and won in the divorce suit that was pending at the time.

The proof also negatives the existence of a confidential relation between Robertson and his wife when the deed was executed. The two were already estranged and had signed a separation agreement bringing their marital duties to an end. The husband alone was represented by an attorney, who prepared the deed and supervised its execution. If the instrument did not express the true intention of the parties, the omission must be attributed to Robertson's reliance upon the advice of counsel rather than to a reliance upon the confidence that a husband reposes in his wife when the two are living together in harmony.

Robertson's alternative request for a cancellation of the deed is based upon the fact that the Robertsons were married, in 1935, about three weeks before Mrs. Robertson obtained a divorce from her first husband. Robertson says that he did not learn until 1954 that his first marriage to the appellee was void. On this basis he contends that the appellee was not legally entitled to a property settlement in 1947 and that the conveyance should therefore be canceled.

There are two answers to this reasoning. First, Robertson has insisted all along that his only purpose in executing the deed was to provide for the support of his daughter, and there is no reason to think that he would have been less generous to his child had he known that the marriage was invalid. Secondly, although the first marriage was void, the Robertsons married and divorced each other a total of four times. The last three

marriages were legal, and at least one of the later divorces was obtained by Mrs. Robertson. There is no proof that this undivided half ·interest in forty acres of land is more than she was entitled to receive upon the dissolution of the valid marriages.

Affirmed.