SIDNEY THOM v. JOHN M. GEYER

73-46                                          497 S.W. 2d 689

Opinion delivered June 25, 1973

[Rehearing denied August 27, 1973.]

*James R. Howard,* for appellant.

*Willis V. Lewis,* for appellee.

GEORGE ROSE SMITH, Justice. The appellant, Sidney Thom, as the record owner of a dwelling house in Little Rock, brought this action in unlawful detainer to recover possession from his tenant, the appellee John M. Geyer. By counterclaim Geyer asserted the existence of an oral agreement by which he was entitled to purchase the property from Thom for the amount of money that Thom had spent in acquiring it. The case was transferred to equity. The chancellor, apparently without taking into consideration Geyer's burden of proving the asserted oral contract by clear and convincing evidence, entered a decree permitting Geyer to purchase the property within 60 days for $12,107.10. We find it necessary to reverse the decree, because Geyer's proof falls short of the standard that is required in a case of this kind.

For many years Geyer owned the property and occupied it as his home. In 1968, however, Geyer suffered business losses, became insolvent, and lost the property by foreclosure to his mortgagee, Southwest Factoring Corporation. Geyer continued to occupy the property, paying rent to Southwest.

Southwest decided to liquidate its business and offered to resell the property to Geyer for $9,000 if he could arrange the financing. The property had been appraised at $14,650 by a federal agency. Thom, who was a stranger to Geyer, was in the mortgage-banking business. Geyer saw one of Thom's advertisements and applied to him for a loan. Thom investigated Geyer's credit rating and found it to be so poor that no loan could be arranged.

From this point forward the testimony is in sharp dispute. Thom testified that he agreed to, and did, purchase the property from Southwest for $9,000, with Geyer to continue in possession as a tenant. Thom was to hold the property for six months, as a long-term capital investment, unless Geyer bought it during that period at a

reasonable profit to Thom. At the expiration of the six months Thom would be free to put the house on the open market if Geyer had not repurchased it.

On the other hand, Geyer testified that Southwest made a special concession to him in agreeing to sell the property to Thom for only $9,000. According to Geyer, he and Thom orally agreed that Geyer would occupy the property as a tenant and be allowed a full year in which to repurchase the property from Thom for the amount of money that Thom had invested in the property, plus a profit to Thom of $1,000. Geyer had occupied the house for almost 15 months after Thom's purchase when this action in unlawful detainer was filed.

The governing principles of law are clear. Under the statute of frauds an oral contract for the purchase of land is unenforceable unless some exception to the statute is shown. The only exceptions that might apply here are these:

First: In some instances the buyer's possession of the property amounts to part performance of the contract. That rule is inapplicable here, because continued occupancy by one who was already in possession as a tenant does not amount to part performance. *Rolfe* v. *Johnson*, 217 Ark. 14, 228 S.W. 2d 482 (1950).

Second: A verbal agreement by which one person agrees to bid in another's land at a judicial sale and resell it to him will be enforced if it would be a fraud to permit the purchaser to repudiate his promise. *Coleman* v. *Wegman*, 172 Ark. 132, 288 S.W. 376 (1926); Restatement, Restitution, § 181 (1937). Here, however, Thom did not buy the property until long after the judicial sale to Southwest. Moreover, the *Coleman* case holds that such an agreement must be proved by clear and convincing evidence. That standard of proof, as we shall see, was not met here.

Third: Although a grantee's oral promise to hold the land for a third person is unenforceable, a constructive trust will be imposed if it is shown by clear and convincing proof that the parties were in a confidential relation or that the grantee's promise was intentionally fraudulent, having been made with no intention of performing it.

*Robertson* v. *Robertson,* 229 Ark. 649, 317 S.W. 2d 272 (1958). Here no confidential relation existed.

Thus Geyer had the burden of proving by clear and convincing evidence that Thom made an intentionally and deliberately false promise to hold the land for Geyer. Upon the record before us that burden was not sustained. In fact, the proof may even preponderate slightly in Thom's favor.

The principal witnesses were the two interested parties. Thom testified positively that Geyer's right to repurchase was to continue for only six months. The capital gains aspect of the transaction provides a reasonable basis for that limitation. Furthermore, about nine months after the making of the oral agreement, Thom wrote a letter to Geyer in which Thom said that he was giving Geyer an extension of time within which to vacate the premises. Such an extension would have been unnecessary if the agreement had actually been for a year instead of for six months. It does not appear that Geyer disputed Thom's statement, which accordingly provides corroboration of Thom's version of the agreement.

Geyer's testimony not only lacks similar corroboration but also falls short of establishing deliberate fraud on Thom's part. To some extent Geyer's testimony is contradicted by his own pleadings. That is, his counterclaim made no reference to the $1,000 profit that he testified about. Instead, that pleading asserted that Thom agreed that "the rent would be sufficient interest on his money"—an assertion not made by Geyer on the witness stand. Finally, Geyer's testimony was at times so vague and hesitant, with statements that Thom's profit was to be "$1,000 more or less," that the chancellor intervened at one point and questioned Geyer closely about the precise terms of the agreement. There is actually hardly any indication of the type of fraud on Thom's part that would have to be shown for Geyer to prevail. Certainly that kind of dishonesty was not proved by clear and convinding evidence.

Reversed.

FOGLEMAN, J., concurs. BROWN and HOLT, JJ., not participating.

JOHN A. FOGLEMAN, Justice, concurring. I concur because I think the decree was clearly against the preponderance of the evidence.