James T. BRAMLETT *v.* Benjamin SELMAN

80-35                                        597 S.W. 2d 80
Supreme Court of Arkansas
Opinion delivered April 21, 1980

458

*Ginger Atkinson,* for appellant.

*Henry & Duckett,* by: *David Henry,* for appellee.

JOHN F. STROUD, Justice. Appellee filed suit against his homosexual companion to require appellant to convey the title to a residence purchased with funds furnished by appellee. Appellant contended the purchase money was a gift from his

paramour, but the trial court accepted appellee's position that the title was held by appellant as constructive trustee for appellee. We agree with the Chancellor.

In early 1977 appellant and appellee became involved in a homosexual relationship and appellee left his wife and children and moved in with appellant in his apartment. Shortly thereafter divorce proceedings were instituted between appellee and his wife. In April of 1977 appellee opened an account in a local savings and loan institution in appellant's name and deposited a total of $7,000.00. These are the only material facts on which the parties agree. Appellant asserts that the appellee "lavished" him with a variety of gifts, including the $7,000.00 used to purchase a residence on Spring Street which both parties occupied after the purchase was closed. However, appellee claims the money was not a gift, but was put into appellant's account for the sole purpose of having appellant purchase the Spring Street property in his name for the benefit of appellee. Appellee testified that there was a clear understanding of the scheme to conceal the acquisition of the property from his wife due to their pending divorce action. According to appellee, appellant had orally agreed to convey title to the property to him once the divorce was concluded. Various improvements were made by both parties to the structure on the property, although the evidence tended to show that the vast majority of them were either paid for by appellee and his father or were performed by appellee and his parents.

Appellee testified that he eventually felt guilty about hiding the property from his wife and, after discussing it with his attorney, had his attorney inform her of the situation. His testimony is uncontroverted that by way of settlement, he paid his wife $2,000 for her dower interest in the Spring Street property. Near the end of December of 1977, appellant and appellee had a falling out and a dispute ensued over the ownership of the property. Appellant claimed they "separated" because of appellee's jealousy, but appellee said the quarrel was over appellant's refusal to convey the property to him as previously agreed. At any rate, appellee moved out of the Spring Street residence, and on March 1, 1978, brought this action requesting the court to settle the

ownership of certain personal property, to require appellant to vacate the Spring Street property, and compel appellant to convey the property to him. After hearing all the arguments and evidence offered by each party, the chancellor found that appellant held title to the property as constructive trustee for appellee, ordered appellant to vacate the premises, and ordered him to convey title to the property to appellee. The chancellor also settled the ownership of certain personal property, but ordered appellee to reimburse appellant in the amount of $1,624.48 for his expenses incurred as constructive trustee. From the decision of the chancellor appellant brings this appeal, alleging five points for reversal.

Appellant first contends that the trial court erred in admitting parol evidence of an oral agreement concerning an interest in land as it is in violation of the statute of frauds. Title 38 of Ark. Stat. Ann. (1947) is entitled Statute of Frauds and includes Ark. Stat. Ann. §§ 38-101 — 38-107 (Repl. 1962). Two of these statutes are particularly relevant to this action. Ark. Stat. Ann. § 38-101 provides, in pertinent part:

> No action shall be brought . . . to charge any person upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them; . . . unless the agreement, promise, or contract, upon which such action shall be brought, or some memorandum or note thereof, shall be made in writing, and signed by the party to be charged therewith, or signed by some other person by him thereunto properly authorized.

Ark. Stat. Ann. § 38-106 provides:

> All declarations of creations of trusts or confidences of any lands or tenements shall be manifested and proven by some writing signed by the party who is or shall be by law enabled to declare such trusts, or by his last will in writing, or else they shall be void; and all grants and assignments of any trusts or confidences shall be in writing signed by the party granting or assigning the same, or by his last will in writing, or else they shall be void.

These statutes would ordinarily defeat the type of contract and trust alleged by appellee in this case, as both fail to meet the writing requirement of these statutes. However, where one of the parties alleges the existence of an implied or constructive trust, as here, it is well-settled that parol evidence is admissible to establish its existence. *Bray* v. *Timms,* 162 Ark. 247, 258 S.W. 338 (1924); *Harbour* v. *Harbour,* 207 Ark. 551, 181 S.W. 2d 805 (1944). In *Walker* v. *Biddle,* 225 Ark. 654, 284 S.W. 2d 840 (1955), the court held that the statute of frauds by its own terms does not apply to a constructive trust, and cited Ark. Stat. Ann. § 38-107 (Repl. 1962), which provides:

> Where any conveyance shall be made of any lands or tenements, by which a trust or confidence may arise or result by implication of law, such trust or confidence shall not be affected by anything contained in this act [§§ 38-104 — 38-107].

In this case, as appellee alleged the existence of a constructive trust, it was proper for the trial court to admit parol evidence of an oral promise to determine if a constructive trust should be imposed by a court of equity.

Appellant next contends that the trial court erred in finding that appellee had met the burden of proof required to remove an oral agreement from the statute of frauds. To remove an oral contract from the statute of frauds, it is necessary that the quantum of proof be clear and convincing both as to the making of the oral contract and its performance. *Pfeifer* v. *Raper,* 253 Ark. 438, 486 S.W. 2d 524 (1972); *Huspeth* v. *Thomas,* 214 Ark. 347, 216 S.W. 2d 389 (1949). For the trial court to impose a constructive trust on the Spring Street property, the Chancellor must have found that appellee had proven the existence and part performance of the oral agreement by clear and convincing evidence. The trial court occupied a better position than this court to observe the demeanor of the witnesses and unless his findings are clearly against the preponderance of the evidence, they will not be disturbed. *Digby* v. *Digby,* 263 Ark. 813, 567 S.W. 2d 290 (1978); *Minton & Simpson* v. *McGowan,* 256 Ark. 726, 510 S.W. 2d 272 (1974); Arkansas Rules of Civil

Procedure, Rule 52(a). In cases such as this where the testimony on behalf of each party is almost totally inconsistent, we must defer to the trial court's judgment as to the credibility of the witnesses. *Whitmore* v. *State,* 263 Ark. 419, 565 S.W. 2d 133 (1978); *Johnson* v. *State,* 249 Ark. 268, 459 S.W. 2d 56 (1970).

The trial court was undoubtedly persuaded by the acts of the parties and the witnesses which were consistent with the verbal agreement alleged by appellee. The payment of $2,000 by appellee to his wife in settlement of her dower interest in the Spring Street property was absurd unless appellee believed he was the "real" owner of the property. It is also highly unlikely that appellee's father would have paid for materials and done substantial remodeling work without pay to a house not owned by his son. Finally, the offer of settlement made by appellant through his attorney to appellee's attorney prior to the filing of suit by appellee cannot be reconciled with the claim of appellant that the property was truly a gift to him. The letter offer under date of January 11, 1978, was that appellant would deed the property to appellee upon reimbursement of approximately $2,-000 in expenses plus a payment of $1,500 for "labor and profit." It is inconceivable that appellant would be willing to accept $3,500 for property he claimed he owned, when the cost of the house and the cost of improvements exceeded $15,-500. Therefore, we cannot say that the trial court erred in finding that appellee had met the burden of proof required to remove an oral agreement from the statute of frauds.

We combine appellant's third and fourth points where he alleges that the trial court erred in finding the existence of a constructive trust. He contends that the evidence was insufficient as there was no proof of positive fraud which appellant contends is required for a constructive trust. Such is not the case, as proof of fraud is not necessary for the imposition of a constructive trust. This court has often held that although a grantee's oral promise to hold the title to land for a third person is unenforceable, a constructive trust will be imposed if it is shown by clear, cogent and convincing evidence that the grantee's promise was intentionally fraudulent *or* that the parties were in a confidential relationship. *Thom* v. *Geyer,* 254

Ark. 716, 497 S.W. 2d 689 (1973); *Robertson* v. *Robertson,* 229 Ark. 649, 317 S.W. 2d 272 (1958); *Walker* v. *Biddle,* supra. The evidence in this case is not supportive of a finding that appellant took title to the property with an intent to permanently deprive appellee of the property. To the contrary, the evidence indicates that no such intent was evident until several months after the deed to appellant had been executed. The trial court undoubtedly believed the testimony of appellee that the dispute arose in December of 1977 when appellant refused to convey the property to appellee pursuant to their oral agreement. Therefore, for a constructive trust to be imposed by the court of equity in this case, it must rest not upon fraud but upon the existence of a confidential relationship.

Appellant argues, and the dissenting opinion in this case suggests, that the trial court should be reversed because appellee was attempting to defraud his wife and, therefore, his hands were unclean. The latest decision by this court on this point was rendered in 1979 in *Henry & Mullen* v. *Goodwin & Attaway,* 266 Ark. 95, 583 S.W. 2d 29 (1979). In that case the owner of real property conveyed the property to a niece to become eligible for supplemental Social Security income, but nevertheless, a constructive trust was imposed. At the time of trial the fraud perpetrated on the Social Security office was unresolved, but in this case appellee, prior to trial, of his own volition and conscience, abated the fraud on his wife by voluntarily informing her of the deception and paying her for her dower interest in the property. In the *Henry* case, the court pointed out that a resulting trust does not arise if the policy against permitting unjust enrichment of the transferee is outweighed by the policy against giving relief to a person who has entered into an illegal transaction, but nevertheless held that in balancing the equities, the property owner's conduct was not so reprehensible that she should lose the property. The balancing of equities in this case would likewise justify the chancellor in finding that appellee should not be deprived of property purchased with his funds and remodeled at his expense.

Finally, appellant claims that the trial court erred in holding as a matter of law that a fiduciary relationship ex-

isted between the parties based on their homosexual involvement. The trial court did not hold that all homosexual relationships as a matter of law involve a confidential relationship. Whether or not a confidential relationship exists depends upon the actual relationship between the parties. It is not surprising that this court held in *Walker* v. *Biddle,* supra, that "The relation between brother and sister is, in the absence of estrangement or other unusual circumstances, one of confidence; . . . " The relation between aunt and niece would usually be less close, but in *Henry & Mullen* v. *Goodwin & Attaway,* supra, a confidential relationship was found to exist when the niece lived near her aunt and visited with her on a daily basis. There the court adopted a definition of the term from the Restatement Second, Trusts, "A confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind." In the case on appeal, appellee clearly demonstrated confidence in appellant, and appellant certainly purported to act with appellee's interest in mind at the time he purchased the property. A kinship is not necessary for a confidential relationship, as is apparent in *Kingrey* v. *Wilson,* 227 Ark. 690, 301 S.W. 2d 23 (1957). There, a constructive trust was imposed when grantee was not related to the grantor, but was merely a friend and neighbor.

In the case now on appeal, the facts were sufficiently clear, cogent and convincing for the chancellor to find that a confidential relation existed between appellant and appellee when the undisputed testimony indicated they had been homosexual lovers for approximately a year and had lived together for most of that year. The dissenting opinion cites an Arkansas case which should be examined inasmuch as it squares with the facts of this case on several points. *Kingrey* v. *Wilson,* supra. Land given to a wife by her husband was conveyed by the wife to friends to hold for her during a divorce action so that her husband could not take it. In spite of this and in spite of the fact that the grantees were not relatives but merely close, personal friends and neighbors, the court imposed a constructive trust. The deed was set aside because grantees, standing in a confidential relationship to the grantor, made an oral promise and refused to perform their oral promise. The grantees attempted to cross-examine the gran-

tor and asked if she was living in an adulterous relationship, but the trial court denied the question. On appeal, this court indicated the case would have been affirmed even if she had been allowed to answer and had answered in the affirmative.

All homosexual involvements are not as a matter of law confidential relationships sufficient to support a constructive trust, but a court of equity should not deny relief to a person merely because he is a homosexual. This is the view adopted by the Georgia Supreme Court in 1979 in *Weekes* v. *Gay,* 243 Ga. 784, 256 S.E. 2d 901 (Ga. 1979). There, a house shared by homosexuals was destroyed by fire and the court imposed an implied trust on the proceeds. The proceeds were deemed held for the benefit of the party who furnished the purchase money even though his name did not appear on the deed nor was he an insured under the insurance policy. Irrespective of the homosexual relationship, the court noted that equity will not allow a windfall to one party when the beneficial interest should flow to the other party. It can be said no clearer than it was said last year by this court in *Henry,* supra:

> Equity, however, will impose a constructive trust when a grantee standing in a confidential relation to the grantor orally promises to hold land for the grantor and later refuses to perform his promise.

Affirmed.

FOGLEMAN, C.J., and HICKMAN and PURTLE, JJ., dissent.

JOHN A. FOGLEMAN, Justice. I cannot join in the majority's declaration of a constructive trust based upon a confidential relation between these two homosexual lovers. It is clear that, if appellee was not simply lavishing gifts upon his newly found lover, as appellant contends, the taking of title to property involved was an attempt by appellee to defraud his wife, whom he had abandoned to live with his lover. If the relationship between appellee and appellant were husband and wife, appellee would not be permitted to extricate himself from a situation that was of his own *voluntary* creation, even though appellant was a party to the fraud, because appellee's hands were unclean. *McClure* v. *McClure,* 220 Ark. 312, 247

S.W. 2d 466. Why should he be able to do so because of a homosexual relationship? This is not a case in which appellant has come into equity to seek to enforce his advantage of his participation in the fraud, so such cases as *Sliman* v. *Moore,* 198 Ark. 734, 131 S.W. 2d 1 have no application.

The evidence to engraft an *implied* (either resulting or constructive) trust upon an absolute deed must be clear, unequivocal and convincing. *McClure* v. *McClure,* supra. It must be full, clear and conclusive, or of so positive a character as to leave no doubt of fact and of such clearness and certainty of purpose as to leave no well-founded doubt upon the subject. *Mulligan* v. *Payne,* 232 Ark. 922, 341 S.W. 2d 53. Although the majority recognizes that the evidence must be clear and convincing, it does not say that it is unequivocal. Neither does it say that the evidence put the facts or the subject beyond doubt; nor do I think it could. Time will not permit me to develop my disagreement with the majority's and the chancellor's point of view on that question, but it is clear to me that appellee has failed to meet his burden upon important elements required to establish a constructive trust, which is one form of an implied trust. For example, there is no evidence that appellant made a false and fraudulent promise at the time title was put in appellant to convey the property to appellee, with the intent at that time to defraud appellee. This is important because the imposition of a constructive trust is totally dependent upon proof of a confidential relation. *White* v. *White,* 254 Ark. 257, 493 S.W. 2d 133; *Thom* v. *Geyer,* 254 Ark. 716, 497 S.W. 2d 689. The violation of a verbal promise by appellant to convey the property to appellee, when the situation which caused the title to be put in appellant no longer obtained, cannot be the basis of a constructive trust. *Patton* v. *Randolph,* 197 Ark. 653, 124 S.W. 2d 823. In *S & M Oil Co.* v. *Mosley,* 227 Ark. 250, 297 S.W. 2d 926, we said:

From our cases, and from authorities generally, the following rules — applicable to this case — are clearly recognized: (a) a constructive trust in lands — as distinguished from an express trust — may be shown to have been established by parol, but such evidence must be clear, cogent and convincing; and (b) in the absence

of family relationship or confidential relationship, the evidence required to establish a constructive trust must show that the original promise to reconvey was made with a fraudulent intention; and the mere failure to reconvey — standing alone — is not sufficient to establish the fraudulent intent.

See also, *Robertson* v. *Robertson,* 229 Ark. 649, 317 S.W. 2d 272.

It must be remembered that, even under appellee's theory, title was not placed in appellant to accomplish some legitimate purpose for appellee's benefit such as was shown in *Davidson* v. *Sanders,* 235 Ark. 161, 357 S.W. 2d 510, where the title was placed in one individual to enable him to obtain a loan to pay off an indebtedness against the property conveyed to him. The lack of proof of an intentionally false and fraudulent verbal promise to reconvey by appellant is important at the time he took title, because the imposition of a constructive trust must be based upon that fraud or proof of a confidential relation.

There are some relationships that are presumed to be confidential as a matter of law. Among them are attorney and client, guardian and ward, trustee and cestui que trust. See *Hindman* v. *O'Connor,* 54 Ark. 627, 16 S.W. 1052, 13 LRA 490; *Palmer* v. *Foley,* 305 Pa. 169, 157 A. 474 (1931); *In re Null's Estate,* 302 Pa. 64, 153 A. 137 (1930). Kinship is not such a relation. *Jones* v. *Gachot,* 217 Ark. 462, 230 S.W. 2d 937. We have taken the relationship of brother and sister, in the absence of estrangement or other unusual circumstances, to be one of confidence, in *Walker* v. *Biddle,* 225 Ark. 654, 284 S.W. 2d 840, cited and relied upon by the majority. Is the court now equating the relationship of homosexual lovers with that of brother and sister?

As I view the matter, it was incumbent upon appellee to prove that appellant was dominant and appellee was servient in the relation and that appellee was influenced to act as he did by appellant or that the relationship was such that appellee relied upon appellant for advice. *In re Estate of Button,* 459 Pa. 234, 328 A. 2d 480 (1974); *Leedom* v. *Palmer,* 274 Pa. 22, 117 A. 410 (1922); *Ringer* v. *Finfrock,* 340 Pa. 458, 17 A. 2d

348 (1941); *In re Pyewell's Estate,* 334 Pa. 154, 5 A. 2d 123 (1939); *In re Estate of McClatchy,* 433 Pa. 232, 249 A. 2d 320 (1969); *Snyder* v. *Hammer,* 180 Md. 690, 23 A. 2d 653 (1942); *Bass* v. *Smith,* 189 Md. 461, 56 A. 2d 800 (Ct. App., 1948); *Croker* v. *Clegg,* 123 N.J. Eq. 332, 197 A. 13 (1938); *In re Stroming's Will,* 12 N. J. Super. 217, 79 A. 2d 492 (1951); *Peoples First National Bank & Trust Co.* v. *Ratajski,* 399 Pa. 419, 160 A. 2d 451 (1960); *Silver* v. *Silver,* 421 Pa. 533, 219 A. 2d 659 (1966); *Foster* v. *Schmitt,* 429 Pa. 102, 239 A. 2d 471 (1968); *Merritt* v. *Easterly,* 226 Ia. 514, 284 N.W. 397 (1939); *Jensen* v. *Phippen,* 225 Ia. 302, 280 N.W. 528 (1938); *Suchy* v. *Hajicek,* 364 Ill. 502, 4 N.E. 2d 836 (1936); *Hunter* v. *Hunter,* 152 Ind. App. 365, 283 N.E. 2d 775 (1972); *Anderson* v. *Lybeck,* 15 Ill. 2d 227, 154 N.E. 2d 259 (1958). See *Kingrey* v. *Wilson,* 227 Ark. 690, 301 S.W. 2d 23. It exists where one occupies a superior position over the other, intellectually, physically, governmentally, or morally, with the opportunity to use that superiority to the other's disadvantage. *Union Trust Co. of New Castle* v. *Cwynar,* 388 Pa. 644, 131 A. 2d 133 (1957).

I have read and reread the decree in this case and I find no reference to either a confidential relationship or a homosexual one. As I read the decree, the chancellor found a trust ex maleficio. He found specifically that appellant took title as constructive trustee to hold until appellee's divorce had become final. This is the only significance of appellant's intent at the time of the conveyance to him.

The majority professes that it is not saying that a confidential relation exists in all homosexual involvements sufficient to establish a constructive trust but finds evidence sufficient to support the constructive trust imposed by the trial court, in spite of its statement that the facts were sufficiently clear, cogent and convincing for the chancellor to find that a confidential relation existed between appellant and appellee when the undisputed testimony indicated that they had been homosexual lovers for approximately a year and lived together for most of that year. What distinguishes this relationship from any other homosexual one? The majority does not say, and I cannot find anything in the record. In its reliance upon *Henry* v. *Goodwin,* 266 Ark. 95, 583 S.W. 2d 29 (1979), it overlooks a critical factor in upholding the evidence

of a confidential relation upon which a constructive trust may be based. There we recognized that the relation exists when one has gained the confidence of the other and purports to act or advise with the other's interest in mind. It must also be remembered, that unlike the situation in *Henry,* the title to the real property involved here was not conveyed by appellee to appellant with the specific understanding that appellant would reconvey it.

There is not a scintilla of evidence that appellant influenced or advised appellee to act as he did in the premises. To the contrary, even appellee says that the whole transaction was his fraudulent idea.

Under the circumstances existing here, there would have been a presumption that appellee had made a gift to appellant if appellee had been the husband and appellant the wife. See *Jones* v. *Jones,* 118 Ark. 146, 175 S.W. 520; *Harrison* v. *Knott,* 219 Ark. 565, 243 S.W. 2d 642, 28 ALR 2d 405; *Glover* v. *Glover,* 153 Ark. 167, 240 S.W. 716. Why should there not have been such a presumption here? And what rebutted that presumption, if it applied?

It has been held that a confidential relation to support a constructive trust cannot be based merely upon evidence of a meretricious relationship, which is not of long standing and in which the parties do not hold themselves out as husband and wife, particularly when the husband is still married to another woman. See *Adams* v. *Jensen-Thomas,* 18 Wash. App. 757, 571 P. 2d 958 (1977). Why should the relation here be treated differently? More importantly, we have spoken on the matter of confidential relation where paramours were involved. In *Shipp* v. *Bell & Ross Enterprises, Inc.,* 256 Ark. 89, 505 S.W. 2d 509, we said:

> To support her counterclaim, Mrs. Shipp testified that she and Bell were paramours and that the relationship continued through this litigation until after she filed her counterclaim. Because of this relationship she trusted Bell when he told her she would get what was legally hers and that he would take care of her. ***

* * *

Mrs. Shipp here argues that there was a special trust and confidence existing between her and Bell and that under the rule stated in *Gillespie* v. *Holland,* 40 Ark. 28 (1882), her gift to Bell was prima facie void. The general rule, however, is that where special trust and confidence exist between the parties to a deed, the gift to the party holding the dominant position is prima facie void. Thus, before she would be entitled to invoke the prima facie rule she must show that Bell was holding the dominant position. On that issue we cannot say that the evidence preponderates in Mrs. Shipp's favor. It certainly cannot be inferred from the illicit relationship.

Why should homosexual paramours be treated differently?

I confess that I am as bewildered by the majority's statement that I suggest that the case should be reversed because appellee's hands were unclean due to his confessed attempt to defraud his wife as I am by the majority's efforts to find a confidential relationship in the homosexual relationship. I would point out, however, that a trust ex maleficio, not one based upon a confidential relationship between homosexuals, was the basis of the chancellor's holding. Although I do not think the dirt on appellant's hands is without significance, I think the majority has found a confidential relationship without any support for its findings.

I would reverse the decree and leave the parties where they were before the courts intervened.

I am authorized to state that Mr. Justice Hickman and Mr. Justice Purtle join in this opinion.