McDONALD v. TYNER.

Opinion delivered October 21, 1907.

1. STATUTE OF FRAUDS—CONSTRUCTIVE TRUSTS.—Kirby's Digest, § 3666, requiring that declarations of trust shall be manifested by writing signed by the declarant, refers to express trusts, and not to trusts *ex maleficio.* (Page 192.)

2. TRUST—WHEN ENFORCED.—Where a debtor conveyed substantially all of his property, either absolutely for an inadequate consideration, or upon the grantee's verbal promise to hold the title as trustee for the grantor's creditors, which trust the grantee subsequently disclaimed, in either case equity will enforce a constructive trust against the grantee in favor of the grantor's creditors. (Page 192.)

Appeal from Greene Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

*W. W. Bandy*, for appellant.

1. The deed from Wilcockson to appellant is absolute in its terms. Under the allegations of the cross-complaint and under the proof, if there is a trust, it is an express trust, and void under the statute. Kirby's Digest, § 3666. Oral testimony cannot be heard to engraft an express trust upon a deed absolute in terms. 57 Ark. 632. See also 1 Perry on Trusts, § § 81, 82; Reed on Stat. Frauds, § 851.

2. A deed, absolute on its face, conveying real estate, will not be set aside and a trust declared in favor of a stranger to the deed, unless the proof is strong, clear, convincing, practically overwhelming. 57 Ark. 637; 48 Ark. 20; 37 Ark. 146; 50 Ark. 71; 40 Ark. 146; 19 Ark. 278; 31 Ark. 163; 40 N. W. 717; 10 S. W. 26.

*Johnson & Huddleston*, for appellee.

1. Appellants should have specially pleaded the statute below, and will not be permitted to plead it here for the first time. 56 Ark. 263; 32 Ark. 97; 9 Enc. Pl. & Pr. 707-8. There was no objection to the competency of the evidence relating to the real arrangement between the parties which led to the execution of the deed; hence the plea of the statute, if there was a plea, will be held to have been waived. 29 Am. & Eng. Enc. of L. (2 Ed.), 811.

2. The evidence establishes not an express trust but a resulting trust. Kirby's Digest, § 3665.

3. The act of McDonald in procuring the deed to be made to him absolute on its face, in the absence and without the knowledge of his co-sureties, was a fraud upon them, against which equity will grant relief. The statute of frauds will not be permitted to protect the perpetrator of such a fraud, and the rule prohibiting the introduction of parol testimony to engraft a trust upon a deed obtained by such means will not apply. 1 Ark. 391; 19 Ark. 278; *Id.* 146; *Id.* 49; 36 Ark. 146; 69 Ark. 513; 52 Ark. 207; 24 O. St. 623; 29 Am. & Eng. Enc. of L. (2 Ed.), 845.

4. If it be conceded that the transaction was an express trust, appellant is not benefited. No one of the sureties had any right to take security or indemnity from the principal for his

own benefit alone. If he should take security, it would inure to the benefit of all. 27 Am. & Eng. Enc. of L. (2 Ed.), 487 and cases cited; 13 O. St. 514; 39 Vt. 620.

HILL, C. J. T. R. Wilcockson was guardian of Mary, Laban and Henry Cupp, minors. Sims, Hester, Camp and Light, and appellant McDonald were sureties upon his guardian's bond. Wilcockson was short in his accounts with his wards, and financially embarrassed in other ways. Sims and McDonald, two of his sureties on his guardian's bond, insisted upon his conveying to the sureties all his property to indemnify them, and he agreed to do so; and he and McDonald left Sims, and went to the office of McDonald's lawyer to have the conveyance prepared according to agreement. There is a conflict in the testimony between McDonald and Wilcockson as to what occurred thereafter; Wilcockson saying that there was no change in the agreement, but only a change in the form of the transaction, and McDonald saying that he declined to take the property in trust for the sureties, and that he offered to buy, and did buy, the real estate which was conveyed to him for $2,300—$300 paid in cash and his note for $2,000, payable five years after date. Other assets were conveyed at the same time; Wilcockson saying, to carry out the agreement to convey the sureties all his property, and McDonald giving another version of it. Whatever may be the truth of this controversy, the fact remains that Wilcockson conveyed to McDonald all of his property, the value of which is variously estimated by the witnesses from $2300 to nearly double that sum. McDonald says that any shortage in Wilcockson's accounts as guardian was to be credited on the $2,000 note.

Tyner, as successor of Wilcockson as guardian of the Cupp minors, brought this suit against Wilcockson and his sureties, and the sureties and Wilcockson filed a cross-complaint against McDonald, seeking to hold him as trustee of the property conveyed by Wilcockson to him. The chancellor gave judgment against Wilcockson and his sureties for the sum of $1,304.79, and sustained the cross-complaint, and held that McDonald was trustee for the benefit of his co-sureties, directed an accounting to be had of the property received, and after a full accounting charged certain property remaining in his hands with a lien in favor of Tyner as guardian. McDonald has appealed.

The principal contention which appellant makes here is that, if the evidence established a trust, it was an express trust, and parol evidence of it was contrary to section 3666 of Kirby's Digest. "But the statute in question refers to express trusts, and has no reference to what are called trusts *ex maleficio,* and which are a species of constructive trusts which equity impresses upon property in the hands of one who has obtained it through fraud, in order to administer justice between the parties." *Ammonette* v. *Black,* 73 Ark. 310.

Prof. Pomeroy thus defines trusts *ex maleficio*: "In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity. impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property, either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust. The form and varieties of these trusts, which are termed *ex maleficio* or *ex delicto,* are practically without limit." 3 Pom. Eq. Jur. § 1053.

Shortly before this transfer of all his property to McDonald was made, Wilcockson had agreed to turn over all of his property for the benefit of his sureties. This transfer stripped him of all property (and none was exempt against such a debt) which could respond to their just claims, save alone a negotiable promissory note payable five years after date, which could easily be negotiated. He was pressed for other debts at the same time, and the value of the property conveyed was largely in excess of the named consideration. ʻThese facts stamp the transaction of such a character that the chancellor was fully justified in finding it to be fraudulent; and consequently that McDonald should hold as trustee *ex maleficio* for the benefit of the sureties.

If Wilcockson's testimony of what occurred after he and

McDonald parted from Sims be true, then there was no ,change in the original agreement to convey the property to McDonald in trust for the benefit of the sureties; and a conveyance was made contrary to that agreement; and this would bring the case squarely within the rule announced by Prof. Pomeroy and quoted in *Ammonette* v. *Black, supra,* as follows: "A second well settled and even common form of trusts *ex maleficio* occurs whenever a person acquires the legal title to lands by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specified purpose, * * * * * and, having thus fraudulently obtained the title, he retains, uses and claims the property as absolutely his own, so that the whole transaction by means of which the ownership is obtained is in fact a scheme of actual deceit. Equity regards such a person as holding the property charged with a constructive trust, and will compel him to fulfill the trust by conveying according to his engagement."

Take either view of the testimony—if it was a sale, as McDonald says it was, the evidence justifies it in being held in fraud of creditors; if it was not a sale, then it was fraudulently obtaining a title in the form of a sale to himself when in fact it was to be in trust for all the sureties on the guardian's bond. And this being accomplished by means of actual deceit constituted him a trustee *ex maleficio,* instead of a trustee of an express trust, and takes the case out of the statute of frauds.

Other questions are presented and have been considered. There is nothing found which could warrant a reversal of the judgment, and it is affirmed.