ARMSTRONG *v.* ARMSTRONG.

Opinion delivered April 14, 1930.

*G. N. Cannon* and *J. E. Hawkins,* for appellants.

*Wade Kitchens,* for appellees.

BUTLER, J. A negro family, brothers and sisters, were the joint owners by inheritance of one hundred and sixty acres of land, which, at the death of the ancestor, was burdened by a mortgage to secure a debt of five hundred and fourteen dollars ($514) due a firm of merchants. The mortgage debt was past due, and foreclosure proceedings were threatened, and on February 17, 1914, appellees conveyed the land to Monroe Armstrong, their elder brother.

Shortly after this conveyance Monroe Armstrong borrowed from appellant P. C. Grayson money with which he paid off and satisfied the mortgage then existing, and, to secure Grayson for the money borrowed of him, Monroe executed to Grayson a mortgage and went into the possession of the land, occupying and farming

it, Grayson advancing the necessary money for the farming operation. A number of renewal notes and mortgages were given to Grayson and finally, on the 26th day of April, 1922, Monroe executed a note for $1,800, due November 1st following, and bearing interest at ten per cent., and executed another mortgage which covered the lands, some livestock, a wagon and a crop of cotton to be grown on thirty-five acres of land and a crop of corn to be grown on twenty-five acres of land to secure the payment of said note.

This suit was filed by appellees, April 23, 1928, who allege that the deed was executed to Monroe for the purpose of enabling him to borrow money to pay on a mortgage due the mercantile company, with the understanding that they still owned the beneficial interest in the property conveyed, and that Monroe should manage the same and pay the indebtedness from the rents and profits of the land; that the money borrowed from Grayson and the mortgage executed to him were to carry out the agreement, of which Grayson had full knowledge at the time he loaned the money to Monroe and took the mortgage; that the money borrowed from Grayson had been paid, and that, although the purposes for which the deed to Monroe had been accomplished, Monroe was claiming to be the owner of the land by virtue of deed aforesaid.

Plaintiffs prayed for a decree cancelling the deed to Monroe, and the mortgages to Grayson. The court below found in favor of appellees cancelling the deeds and mortgages as prayed. To reverse the decree of the court below, this appeal is prosecuted.

Appellants insist: (1) That the decree of the court below was not supported by the evidence. (2) If the evidence established the agreement alleged, the same was void because of § 4867 of Crawford & Moses' Digest. (3) That the title was vested in appellant Monroe Armstrong by virtue of his adverse possession for the statutory period of limitation.

As to appellant, Grayson, the court held that the note and mortgage executed April 26, 1922, was inadmissible, because no marginal notation was made and attested on the record as prescribed by law showing any payment on said note or deed of trust within five years from the due date, and that a mortgage executed March 21, 1925, on the pine timber on said land to secure an indebtedness of one hundred fifty dollars ($150) from Monroe Armstrong to appellant Grayson, had been paid and decreed a cancellation of both of said mortgages.

It is the contention of Grayson that the evidence fails to show that he had any knowledge of the agreement between the Armstrongs; that, as to them, he was an innocent purchaser for value, and that appellees are not in position to complain of any failure to make a proper marginal notation on the mortgage record, as they are not "third parties" within the meaning of the statute. Section 7408, C. & M. Digest.

Monroe Armstrong testified that there was no agreement such as claimed by the appellees, but that, finding they would be unable to pay the $514 mortgage, they conveyed the land absolutely to him.

All the appellees, his brothers and sisters, testified in support of the allegations made by them, and their testimony was corroborated by that of disinterested witnesses, among whom was the justice of the peace who drew the deed from appellees to Monroe and took their acknowledgments. According to all this testimony, the deed was made to Monroe as the elder brother, so that he might secure money to pay the indebtedness then existing, and to manage the land and pay whatever indebtedness he might thus incur out of the rents and profits, and that, when this purpose was accomplished, he and his brothers and sisters would be the owners of the land, share and share alike. To our mind, this evidence is clear, satisfactory and convincing, and warranted the chancellor in the conclusion reached.

The contention of appellant, Monroe Armstrong, that this state of facts, if proved, would not entitle appellees to the relief prayed because of the statute of frauds cannot be sustained for the reason that the statute, § 4867, Crawford & Moses' Digest, refers to express trusts, and the facts established by the evidence in this case establish a contructive or a trust *ex maleficio,* to which the statute has no reference.

It is well settled that equity impresses a constructive trust in favor of those entitled to the beneficial interest against one who secures the legal title by means of an intentional false verbal promise, who held the same for a certain specified purpose, and having thus obtained title he retains and claims the property as absolutely his own. *Ammonette* v. *Black,* 73 Ark. 310, 183 S. W. 910; *Reeder* v. *Meredith,* 87 Ark. 111, 93 S. W. 558; *McDonald* v. *Tyner,* 84 Ark. 189, 105 S. W. 74; *Bragg* v. *Hartney,* 97 Ark. 55, 121 S. W. 1059.

The burden was upon appellant Monroe Armstrong to establish his title by adverse possession by a preponderance of the testimony. The trial court found against him on this question, and we do not think the court's finding should be disturbed because it has not been clearly shown that appellees had full knowledge of his intention to claim exclusive and sole ownership for a full seven years before the institution of their suit. The appellees are ignorant negroes, some of them almost imbeciles, and their testimony as to their knowledge of Monroe's intention is neither clear nor definite, but, as Monroe was the elder brother, apparently the most intelligent, and in whom they had trust and confidence, the chancellor might have reasonably concluded that they did not realize the intention of Monroe until he made a conveyance of the timber standing upon the land, which the evidence shows was within seven years before the filing of this suit.

While we think the decree of the trial court as to appellant Monroe Armstrong is supported by the testi-

mony, we fail to find that preponderance which would warrant the conclusion that appellant Grayson knew of any trust relationship existing between Monroe and his brothers and sisters. He testifies that he did not, and there is no competent testimony to the contrary, except the statement of Isaiah Armstrong, who testified as to a conversation with Mr. Grayson in which he stated that Grayson knew that the land was to go back to the heirs when the money was paid. We think the trial court also erred in its refusal to permit the introduction of the note and mortgage because of the failure to make the indorsement required by law upon the margin of the record.

It is unnecessary to decide whether the marginal notation of the record was a sufficient compliance with the law for the appellees were not "third parties" within the meaning of the statute. They were not strangers to the transaction. They knew that the money for which the first mortgage was given was to satisfy a mortgage then existing, and the loan from Grayson was procured and the mortgage to secure it was given with their knowledge and for their benefit. *Morgan* v. *Kendrick,* 91 Ark. 394, 121 S. W. 278, 134 Am. St. Rep. 78; *Clark* v. *Lesser,* 106 Ark. 207, 153 S. W. 112; *McKinley* v. *Black,* 157 Ark. 280, 247 S. W. 1046; *Tyson* v. *Mayweather,* 170 Ark. 660, 281 S. W. 1.

We are also of the opinion that the evidence did not justify the trial court in finding that the debt had been paid. Under the testimony, as set out in the record before us, we are unable to determine the extent, if any, of the indebtedness due by Monroe to Grayson; whether there is anything due, or, if any, how much. There is no testimony that anything has been paid on the note of April 26, 1922, except the notation, "Cash $192.38, date 9-23-1927." It seems that Grayson has received proceeds of the crops grown on this land for a number of years, and the proceeds of the pine timber sold, but there is no testimony as to how much this amounted to, nor is

there any testimony as to what went to make up the $1,800 for which the note of April 26, 1922, was given.

This case will therefore be affirmed as to Monroe Armstrong, and is reversed and remanded as to appellant Grayson for such further proceedings with reference to the indebtedness, if any, from Monroe Armstrong to Grayson secured by the mortgage as may be deemed advisable, consistent with the principles of equity and not inconsistent with the views herein expressed.