Charles R. BEESON and Jeanne H. BEESON, His Wife
*v.* Mary Lelia BEESON and Ulrich R. BEESON

CA 83-141                                    667 S.W.2d 368

Court of Appeals of Arkansas
Division I
Opinion delivered March 28, 1984
[Rehearing denied May 2, 1984.]

80

*Larry W. Chandler* and *Robert R. Wright*, for appellant.

*Keith, Clegg & Eckert*, for appellee.

GEORGE K. CRACRAFT, Judge. Charles R. Beeson and Jeanne H. Beeson appeal from a decree of the chancery court imposing a constructive trust on the title to lands conveyed to Charles R. Beeson by his mother, Mary Lelia Beeson, and ordering him to account for rents and profits derived from the lands in issue during the period of trust. The appellants contend that the court erred in not ruling that the evidence of oral trust agreements was inadmissible under the statute of frauds, that the evidence did not support findings of those facts giving rise to a constructive trust, and in not finding that the claim of appellee was barred by the statute of limitations, laches and estoppel. We do not agree that the chancellor erred in his findings of fact and conclusions of law, but we do modify the relief granted.

There are four deeds in issue in this litigation. One of them was executed by the appellee on July 23, 1965 and another on July 26, 1965. Both of those deeds were duly recorded on July 26, 1965. The other two deeds were both dated August 2, 1967 but were not recorded until April 22, 1977.[1] The appellant contended that the deeds in issue were intended to be absolute gifts and were part of a comprehensive "estate plan." He denied that any agreements accompanied the execution of the deeds respecting the beneficial interest and asserted that these actions were brought solely as a result of difficulties which arose in 1981 with regard to the management of the lands and his subsequent efforts to have a conservator appointed to manage the affairs of appellee.

Appellee owned several tracts of land which she had

---

[1] A fifth deed dated in 1954 and also "recorded on April 22, 1977" was mentioned in the pleadings, evidence and decree. The record, however, discloses that although that deed was "acknowledged in 1954" and "recorded in 1977" it was not signed by the grantor and conveyed no title. The lands described in the 1954 unsigned deed were included in the description of one of the 1965 deeds.

acquired by inheritance and which had been in her family for several generations. Appellant testified that he was appellee's only child and that for many years his mother had insisted that they develop an "estate plan" for her. As part of that plan she executed the deeds in 1965, one to a tract referred to as the "Hartley Farm" which she owned in fee and the other to an undivided one-half interest in what was known as the "Fairview Farm" which she owned as a tenant in common with appellant. These interests in Fairview had been acquired from appellee's sister shortly before her death in 1954. The Fairview Farm had been in appellee's family for several generations. Appellant testified that these two deeds were intended to be recorded promptly and he denied that the execution of these deeds had connection with any transaction other than the estate plan.

Appellant testified that in 1967 appellee executed to him the two additional deeds, directing these deeds not to be recorded immediately because "she wanted something to hold on to." He stated, "Mother wanted to hold on to these things indefinitely, and before I accepted this we discussed this thoroughly. I told her that she could not transfer this land as a death bed transfer. I said that the deed must be recorded and transferred in my name." He stated that he made it quite clear that he must exercise both ownership and management for a period of five years before her death or it would be considered as a transfer in contemplation of death by the Internal Revenue Service. He used actuarial tables of life expectancies in determining that the deeds should be recorded in 1977. He testified that there was, however, an agreement that the income from the land would be used in the "best interest of the entire family" and that it would be left entirely in his discretion as to where the best interest of the family lay and who was to receive the income and in what proportion. He testified that he was the only son and was helping the family do the estate planning, "and they trusted me and had confidence in me."

The appellee testified that in 1965 the appellant was attempting to purchase what was known as the "Watkins Farm" which was adjacent to the Hartley Farm, but he was unable to obtain the required loan. She stated that she

deeded the Hartley Farm and her interest in the Fairview Farm to him for additional collateral for the loan. She stated that she wanted him to purchase the Watkins Farm and encouraged him to do so. She deeded the lands to him merely as collateral for the Watkins loan on his promise that she could continue to manage and control her property and to receive the rents and profits from it for as long as she lived. She stated that all of these properties had originally been acquired by her great-grandfather. She stated that it was the custom in her family to hand land down through the bloodline and that "it was a birthright." There was evidence that for this reason she did not wish her husband to acquire an interest in the properties at her death which he might convey to strangers. She stated that she executed the 1967 deeds for that purpose. She and the appellant had orally agreed that she retain the control of and the beneficial interest in the property for her lifetime and that the deeds were not to be recorded until after her death. She denied that there was any estate planning for tax purposes involved in these transfers and that she had rejected all planning proposals of the appellant. She testified that she did retain the management and control of the properties and the incomes from them until a few years before this action was commenced. At that time she had begun to have arguments with appellant about the management and control of her property and her right to the proceeds.

The testimony of appellee was corroborated to a large extent by her grandson Charles Rische Beeson who stated that he had always been close to his grandparents and had had "over a hundred conversations with her concerning the deeds." He stated that the deeds to the Hartley and Fairview Farms were to collateralize the loan to his father to buy the Watkins place. He stated that the 1967 deeds were executed because his grandmother feared that something might happen to her before her husband's death and that the ownership "as far as bloodline was concerned would be jeopardized." He stated that she wanted to make sure that the title would remain in her bloodline. He testified that there were attempts to work out an estate plan by forming a family corporation and issuing stock in accordance with the value of the lands contributed. This proposal was submitted by the

appellant but was refused by appellee and her husband. He testified further that you could not form a corporation without deeding real estate to it and they could never get appellee to do so because she wanted to "dictate all of the policies of the corporation."

The chancellor found that the 1965 deeds were executed soley in order to provide appellant additional security to obtain the financing to purchase other lands and upon agreement that appellee retain the beneficial interest. With regard to the 1967 deeds he found that they were executed pursuant to an agreement and understanding that they were not to be recorded during the lifetime of the grantor and that she would retain exclusive right to manage and control the lands and the right to receive all income from them during her lifetime. The chancellor also specifically found that at all material times the appellant stood in a confidential relationship with his parents and that the deeds, which were made without consideration, were made pursuant to those specific agreements, undertakings and promises.

Although we review chancery cases *de novo* on the record we will not reverse the findings and conclusions of the chancellor unless they are clearly erroneous, giving due weight to the superior position of the chancellor to judge the credibility of the witnesses. Rule 52(a); *Andres* v. *Andres,* 1 Ark. App. 75, 613 S.W.2d 404 (1981). We cannnot conclude that these findings of the chancellor with regard to the constructive trust are clearly erroneous.

It is well settled that a constructive trust will arise and be imposed in favor of persons entitled to the beneficial interest against one who secures legal title by an intentional false oral promise to hold title for specific purposes and having thus obtained title claims the property his own, or when that promise is given by a grantee who stands in a confidential relationship to the grantor, upon refusal to perform the promise. *Edmondson* v. *Edmondson,* 269 Ark. 664, 599 S.W.2d 765 (Ark. App. 1980); *Walker* v. *Biddle,* 225 Ark. 654, 284 S.W.2d 840 (1955); *Andres* v. *Andres,* supra; *Armstrong* v. *Armstrong,* 181 Ark. 597, 27 S.W.2d 88 (1930). The proof giving rise to a constructive trust must be clear, cogent and

convincing. *S & M Oil Co.* v. *Mosley,* 227 Ark. 250, 297 S.W.2d 926 (1957); *Edmondson v. Edmondson, supra.*

Although a confidential relationship is not established merely by showing that the parties are related, it has been held that the relationship between mother and father and brother and sister is, in the absence of evidence of estrangement or other circumstances, one of confidence and they are not regarded as dealing with each other at arm's length. *Walker* v. *Biddle, supra; Edmondson* v. *Edmondson, supra.*

In 3 Ark. L. Rev. 3 (1948), Justice George Rose Smith stated:

> In the last series of cases which we will discuss, the recent decisions have unsettled principles that seemed to be firmly established in our law. We refer to the rules given in § 44 of the Restatement, to the effect that when land is conveyed in reliance upon the grantee's oral promise to hold it in trust for the grantor, a constructive trust will be imposed if (a) the transfer was procured by fraud, duress, undue influence or mistake, or (b) a confidential relation existed between the parties. It is important to note that in the latter case fraud need not be shown; the mere existence of a confidential relation is enough to dispense with the requirement of a written momorandum.
>
> The rules given in the Restatement are entirely sound. As to clause (a), the statute of frauds should not be used to permit the grantee to take advantage of his own fraud. *And as to clause (b), a writing is not required simply because such a requirement is opposed to normal human conduct. Brother and sister, or others who stand in a confidential relation, do not ordinarily make a written record of their dealings with one another.* A rule of law requiring such a standard of conduct would work injustice in the majority of cases.

There is no evidence here that the relationship between appellant and his mother was not a close and confidential one during the period in which these deeds were executed.

Appellant himself testified that his parents placed full confidence in him. We can find no error in the chancellor's application of the law of constructive trust to the facts as found by him.

Appellant next contends that the appellee's suit was barred by the statute of limitations, laches and estoppel. These are affirmative defenses which must be pled. *Sheffield v. Strickland,* 268 Ark. 1148, 599 S.W.2d 422 (1980). Although the appellant did plead laches and estoppel, we find no pleading in which the statute of limitations was raised. Additionally we note that even when the statute of limitations has been pled, the one relying upon it has the burden of proving those facts giving rise to it. *McCrite v. Hendrix College,* 198 Ark. 1149, 133 S.W.2d 31 (1939). Appellant concedes in his argument that it is difficult to tell when the alleged breach occurred. He argued that as to the 1965 deeds the breach occurred when he recorded them in 1965. Appellee conceded in her testimony that she must have known that deeds that are to be used as collateral for a loan must be recorded, but she steadfastly maintained that there was an oral promise and agreement that she retain the management and control for as long as she lived or until the debt was paid. The chancellor expressly so found. The breach of this trust would not occur until that loan had been repaid. The chancellor further found that the 1967 deeds were executed on the understanding that they not be recorded during the lifetime of the appellee and that she was to retain management, control and beneficial interest. The appellant's breach of his promise not to record the deeds occurred in 1977. The denial of appellee's right to control and have beneficial interest occurred at the same time or thereafter. This action was commenced in January 1982, less than seven years after the breach occurred.

The doctrine of laches does not apply unless there is an unreasonable delay, coupled with some change of position of circumstance which makes it inequitable to enforce the claim. *Hendrix v. Hendrix,* 256 Ark. 289, 506 S.W.2d 848 (1974). Estoppel only arises by a detrimental change of position of one party resulting from the conduct of another. *Davidson v. Sanders,* 235 Ark. 161, 357 S.W.2d 510 (1962);

*Collier* v. *Brent,* 266 Ark. 1008, 589 S.W.2d 198 (Ark. App. 1979). We cannot find, and appellant has not pointed out to us, an inequitable circumstance which resulted from delay on the part of the appellee in bringing her action or any detrimental change in appellant's position by relying on the conduct of the appellee.

Although on *de novo* review in chancery cases we do not reverse unless we find the chancellor's findings of fact and conclusions of law to be erroneous, when we do find error and the record is fully developed where we can plainly see where the equities lie, we do not remand for further proceedings but enter here the decree which ought to have been entered by the chancellor. *Ferguson* v. *Green,* 266 Ark. 556, 587 S.W.2d 18 (1979). The chancellor ordered the 1965 deeds cancelled and set aside on a finding that the agreement of the parties was that the "land be reconveyed when the loan was repaid" and that this agreement between the parties provided for a reconveyance. The evidence of the appellee would establish only that the legal title was to be placed in appellant and that the equitable title would be retained by her *during her lifetime* with the right to manage and control and receive rents and profits. With regard to the 1967 deeds we likewise find no provision for reconveyance by appellant. The appellant did violate the terms of his trust in two material respects — he recorded the deeds during appellee's lifetime and he interfered with her management and control. While we deem it proper for the chancellor to have ordered an accounting of those funds obtained by appellant as a result of his breach, we do not agree that the equities require that the deeds be set aside because it was the parties' intention that appellant take absolute title after appellee's death. The order the chancellor ought to have made would enjoin and restrain the appellant from interfering in any manner with the exclusive use and enjoyment of those properties by the appellee during her lifetime.

The decree as modified is affirmed.

MAYFIELD and COOPER, JJ., agree.